11th Court of Appeals
Eastland, Texas
Opinion
 
Ronald Lee Smock
            Appellant
Vs.      Nos. 11-03-00376-CR & 11-03-00377-CR -- Appeals from Midland County
State of Texas
            Appellee
 
            In Cause No. 11-03-00376-CR, Ronald Lee Smock appeals the trial court’s judgment
revoking his community supervision. We modify and affirm. In Cause No. 11-03-00377-CR,
Ronald Lee Smock appeals his conviction for burglary of a habitation. We affirm.
Cause No. 11-03-00377-CR
            The jury convicted appellant of burglary of a habitation by committing or attempting to
commit indecency with a child. The trial court assessed punishment at confinement for 25 years.
Issues on Appeal
            Appellant brings three issues on appeal. First, appellant argues that the evidence is factually
insufficient to support his conviction. Second, appellant contends that the trial court erred in
admitting hearsay testimony. Finally, appellant challenges the effectiveness of his trial counsel.
Factual Sufficiency
a. Standard of Review
            In order to determine if the evidence is factually sufficient, we must review all of the
evidence in a neutral light and determine whether the evidence supporting guilt is so weak that the
verdict is clearly wrong and manifestly unjust or whether the evidence contrary to the verdict is so
strong that the beyond-a-reasonable-doubt burden of proof could not have been met. Zuniga v. State,
144 S.W.3d 477 (Tex.Cr.App.2004); Ross v. State, 133 S.W.3d 618 (Tex.Cr.App.2004); Vasquez
v. State, 67 S.W.3d 229, 236 (Tex.Cr.App.2002); Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997);
Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996). We review the fact finder’s weighing of the
evidence and cannot substitute our judgment for that of the fact finder. Cain v. State, supra; Clewis
v. State, supra. Due deference must be given to the fact finder’s determination, particularly
concerning the weight and credibility of the evidence. Johnson v. State, 23 S.W.3d 1 (Tex.Cr.App.
2000); Jones v. State, 944 S.W.2d 642 (Tex.Cr.App.1996), cert. den’d, 522 U.S. 832 (1997). 
b. Argument on Appeal
            Appellant contends that the evidence is factually insufficient to establish that he entered the
residence with the intent to commit indecency with a child. While appellant acknowledges that
voluntary intoxication is not a defense, he argues that the evidence established that he was heavily
intoxicated and that his intoxication affected “his ability to intentionally and knowingly commit
acts.” Therefore, appellant contends that his conviction was based on “evidence so weak as to
undermine confidence in the case’s outcome.” We disagree.
c. Evidence Presented 
            The victim testified that early in the morning on August 12, 2001, she was asleep in her
bedroom. The victim was wearing her red Winnie the Pooh shirt and a pair of jeans. Appellant
came into her bedroom and told her to wake up. She sat up in her bed. Appellant asked her “dumb
questions” like was she a boy or a girl. He gave her “wet kisses” and got “right next” to her on her
bed.
            When she tried to lay down in her bed, appellant told her to “[s]coot over.” The victim
testified that she sat back up when he said that. Appellant placed the front part of the bottom half
of his body on top of or next to the front part of the bottom half of her body and kind of “rubbed it
once.” Appellant asked her, “Where does it feel good?” The victim told him, “Nowhere.” The
victim testified that she was afraid and thought that appellant was talking about “[s]-e-x.”
            The victim testified that she was scared and that she thought that she “would start trying to
bang on the door and everything.” When she discovered that the door was not locked, she opened
the door. Her parents were in the hallway.
            The victim also testified that, while he was in her bedroom, appellant tried to touch her
breasts. Appellant put his hand under her Winnie the Pooh shirt. She pulled his hand away; and
appellant said, “Leave your shirt up.” The victim told him, “No.”
            Terri Winters, the victim’s mother, testified that she woke up around 4:00 a.m. The victim
was screaming and crying, “He’s in there. He’s in there.” Terri walked into the hallway and saw
appellant. He was wearing only a pair of jeans. He looked “dishevelled,” and his forehead was
bleeding. His hair was “all messed up,” and his speech was slurred. Terri testified that she thought
appellant “was drunk and just went into the wrong apartment.”
            When Terri asked appellant who he was, appellant answered, “I am her grandpa.” By this
time, the rest of the family had gathered in the hall. Terri further testified that the victim was 10
years old at the time.
            John Baskin Winters, the victim’s father, testified that around 4:00 a.m. he heard the victim
scream “bloody murder.” She was saying, “Daddy, Daddy, he is in my room. He is in my room.” 
John stated that he jumped out of bed and ran into the hallway where the rest of his family was. 
Appellant was standing in the hallway. He was very dirty and unshaven. John had not invited
appellant into his home, and appellant did not have permission to be in the hallway that morning. 
John heard appellant tell Terri that he was the victim’s grandfather. John testified that he told
appellant, “You are not her grandfather. I know who you are. I have seen you next door before.” 
John then escorted appellant out the front door of the home.
            John noticed that appellant had walked around the back of their apartment and was looking
into the Winters’s home through the rear patio window. John testified that he “very quietly” walked
behind appellant and asked him, “What in the world were you doing in my daughter’s bedroom?” 
Appellant answered, “It’s okay. It’s okay. I had a job to do.” John testified that he did not know
what appellant would do next, that he “was scared for the life of” his family and himself, and that
he “proceeded in beating [appellant] up as badly as [he] could.” John stated that appellant was
“uttering crazy things” and that appellant never struck him.
            John testified that, when the police arrived, there was “lots of blood all over” appellant, all
over the patio, and on him. The police found him standing over appellant.
            John testified that, about the time the police arrived, the victim told him that appellant had
been in her bed “next to her trying to give her wet kisses on her mouth” and “rubbing” his hands
“over the top part of her body.” The victim also told John that appellant “was telling her, ‘Oh, I love
you. I love you,’ and this, that, and the other.” John estimated that these statements were made
within 30 minutes after appellant was discovered in the hallway.
            Midland Police Officer Juan Carranco testified that he was dispatched to the Winters’s home
at 4:23 a.m. Officer Carranco found two men in the patio area of the apartment. John was standing
over appellant who was sitting in a chair. Appellant was covered in blood, and he was wearing only
a pair of jeans. He smelled of alcohol. There was a “big puddle of blood” on the patio floor and a
trail of blood on the patio. Inside the home, Officer Carranco found no signs of a confrontation and
no blood. Appellant was placed under arrest and transported to the hospital.
            In the apartment parking lot, Officer Carranco found a vehicle registered to appellant. There
were three drops of blood on the hood of the vehicle. There was a strong odor of alcohol coming
from the inside of the vehicle.
            Midland Police Officer Richard Candelaria testified that he recorded appellant’s statement.
As the tape was played for the jury, Officer Candelaria identified the voices and described what had
occurred. In his taped statement, appellant told Officer Candelaria that, between 1:00 and 1:30 a.m.,
he had seen a little girl crying outside. The girl was about 8 years old. Appellant described how the
little girl took him inside the home. In his taped statement, appellant said that he did not say he was
the child’s grandfather, that he did not talk to a lady inside the home, and that he was wearing a tan
long sleeve shirt and tan pants. Appellant also said that he was not sure why he did not have on a
shirt and that he thought the man might have torn off the shirt during the fight.
            Outside the presence of the jury, appellant was extensively admonished by both his trial
counsel and the trial court concerning his right to remain silent. Appellant waived this right and
testified in his own behalf.
            Appellant testified that he was 41 years old; that he had been convicted of driving while
intoxicated in 1990, 1995, and 1996; that the 1996 conviction was a felony offense; and that he had
been placed on probation for the 1996 conviction. Appellant further stated that, while he was on
probation, he had tested positive for alcohol and had attended an alcohol treatment program. 
            Appellant testified that, at the time of the incident, he was working the midnight to 7:00 a.m.
tour on a rig near Carlsbad, New Mexico, as a driller and a foreman for TMBR/Sharp Drilling
Company. On Saturday, August 11, 2001, he had finished work around 7:15 a.m., gone to his sister-in-law’s apartment in Midland, and then to Lonnie Blake’s apartment next door to the Winters’s
apartment. Appellant stated that he did not drink any alcohol during this time. At 8:00 p.m., he went
to his room at the Days Inn. He went to sleep and woke up at 10:45 p.m. Appellant stated that he
went back over to Blake’s apartment about 11:00 p.m. to see if Blake knew of anyone who might
want to work on his rig.
            Appellant testified that he saw the child crying in front of the apartment at about 11:15 p.m. 
When he asked her where her parents were, the child took his hand and led him to the doorway. At
that point, he “hollered.” Appellant testified that the man must have “knocked” him out at that point
and that he did not remember anything until he was being handcuffed and taken to the hospital.
            Appellant stated that that was his voice on the taped statement that was played for the jury
but testified that “that ain’t what happened” and that “the tape [was] not fully correct.” At trial,
appellant contradicted his taped statement and testified that he did not go into the Winters’s
apartment and that he did not go into the victim’s bedroom.
            At trial, appellant testified that all he had had to drink from the time he got off of work until
4:00 a.m. the next morning was coffee and Coke. Appellant denied trying to fondle the victim or
to simulate a sex act with her, stated that he did not remember what had happened, and repeatedly
denied entering the Winters’s home. 
c. Analysis
            The jury, as the finder of fact, was the judge of the weight and credibility of the witnesses’
testimony. TEX. CODE CRIM. PRO. ANN. arts. 36.13 & 38.04 (Vernon 1979 & 1981). This court
has the authority to disagree with the fact finder’s determination “only when the record clearly
indicates such a step is necessary to arrest the occurrence of a manifest injustice.” Johnson v. State,
supra at 9. 
            When all of the evidence is viewed in a neutral light, the evidence is factually sufficient to
support the jury’s verdict. The evidence supporting guilt is not so weak that the verdict is clearly
wrong and manifestly unjust. Likewise, the evidence contrary to the verdict is not so strong that the
beyond-a-reasonable-doubt burden of proof could not have been met. The first issue is overruled.
Hearsay Evidence
a. Appellant’s Argument
            John testified that the victim told him that appellant had been in her bed “next to her trying
to give her wet kisses on her mouth” and “rubbing” his hands “over the top part of her body” while
he “was telling her, ‘Oh, I love you. I love you,’ and this, that, and the other.” At trial, appellant
objected that the testimony was hearsay. The State argued that the testimony was admissible as an
excited utterance pursuant to TEX.R.EVID. 803. 
            Appellant contends on appeal that this testimony was inadmissible hearsay. Appellant argues
that the event triggering the victim’s statements was John’s physical confrontation with appellant
and not appellant’s interaction with the victim. Appellant bases his argument on John’s testimony
that the victim’s statements were made about 30 minutes after appellant was discovered in the
hallway and on John’s testimony that, while he was hitting appellant, the victim was standing at the
patio door yelling for him to “kill” appellant.
b. Analysis
            Rule 803(2) defines an excited utterance as a statement relating to a “startling event or
condition made while the declarant was under the stress of excitement caused by the event or
condition.” A trial court’s admission of testimony as an excited utterance will not be reversed absent
an abuse of discretion. Zuliani v. State, 97 S.W.3d 589 (Tex.Cr.App.2003). 
            The record reflects that, within the time frame of 30 minutes, appellant entered the Winters’s
home, encountered the victim, was discovered in the hallway of the home, was escorted out of the 
home through the front door, went to the back of the home, looked into the home through the patio
window, and was verbally and physically confronted by the victim’s father. Within the same 30-minute time frame, the police arrived; and the victim made the statements to her father.
            We disagree with appellant’s contention that the victim’s statements were not a result of her
interaction with appellant in her bedroom. To be an excited utterance, the statements were not
required to be made contemporaneous with the event but are required to be made while “under the
stress of excitement” of the event. Rule 803(2); Zuliani v. State, supra. The record reflects that the 
victim’s statements were clearly made while she was “under the stress of the excitement” of her
encounter with appellant. The trial court did not abuse its discretion. The second issue is overruled.
Assistance of Trial Counsel
a. Argument on Appeal
            Appellant contends that he was denied the effective assistance of trial counsel. Appellant
argues that trial counsel’s failure to object to the indictment and failure to request a charge on the
lesser included offense of criminal trespass constituted ineffective assistance. We disagree.
 
b. Standard of Review
            In order to determine whether appellant’s trial counsel rendered effective assistance at trial,
we must first determine whether appellant has shown that counsel’s representation fell below an
objective standard of reasonableness and, if so, then determine whether there is a reasonable
probability that the result would have been different but for counsel’s errors. Strickland v.
Washington, 466 U.S. 668 (1984); Hernandez v. State, 988 S.W.2d 770 (Tex.Cr.App.1999). We
must indulge a strong presumption that counsel’s conduct fell within the wide range of reasonable
professional assistance; and appellant must overcome the presumption that, under the circumstances,
the challenged action might be considered sound trial strategy. Stafford v. State, 813 S.W.2d 503,
508-09 (Tex.Cr.App.1991). The appellate court evaluates trial counsel’s performance in light of 
the totality of trial counsel’s representation and not by examining only isolated acts or omissions. 
Scheanette v. State, 144 S.W.3d 503 (Tex.Cr.App.2004). 
c. Indictment
            The indictment alleged that appellant committed the offense of burglary of a habitation by 
intentionally and knowingly entering “a habitation without the consent of...the owners, and therein
attempted to commit and committed the felony offense of Indecency With a Child by Contact.” 
Appellant argues that the indictment is defective because it only named the underlying felony and
failed to specifically allege the elements of indecency. We disagree.
            TEX. PEN. CODE ANN. § 30.02(a)(1) & (3) (Vernon 2003) provides that a person commits
the offense of burglary when he enters a habitation without the effective consent of the owners and
either commits a felony or has the intent to commit a felony. A burglary indictment must contain
either the name of the underlying felony or allegations of the elements of the underlying felony but
is not required to do both. Davila v. State, 547 S.W.2d 606 (Tex.Cr.App.1977); Gilliam v. State,
746 S.W.2d 323 (Tex.App. - Eastland 1988, no pet’n).
d. Instruction on Lesser Included Offense
            Appellant argues that an instruction on the lesser included offense of criminal trespass should
have been requested and included in the trial court’s charge. An instruction on a lesser included
offense is required to be included in the charge when the lesser offense is included within the proof
necessary to establish the charged offense and when there is some evidence that would permit a
rational jury to find that, if the defendant is guilty, he is guilty of only the lesser offense. Rousseau
v. State, 855 S.W.2d 666 (Tex.Cr.App.), cert. den’d, 510 U.S. 919 (1993); Royster v. State, 622
S.W.2d 442 (Tex.Cr.App.1981). 
            While criminal trespass is a lesser included offense of burglary, there is no evidence in this
case that would permit a rational jury to find that appellant was only guilty of criminal trespass. At
trial, appellant denied that he entered the Winters’s apartment. In his taped statement, appellant
stated that the child invited him into the apartment. 
e. Analysis
            The record does not support appellant’s contention that trial counsel failed to provide
effective assistance. The third issue is overruled.
Cause No. 11-03-00376-CR
            Appellant was originally convicted of felony driving while intoxicated and sentenced to
confinement for ten years. However, the imposition of the sentence was suspended, and appellant
was placed on community supervision for six years. The State filed a motion to revoke, and the trial
court carried the motion during the trial on the merits of the burglary indictment. At the punishment
phase of the trial, the trial court addressed the motion to revoke. The trial court found that appellant
had violated the terms and conditions of his community supervision, revoked the supervision, and
imposed the original sentence of confinement for ten years.
Issues on Appeal
            In four issues, appellant challenges the revocation of his community supervision. The gist
of his arguments is that the trial court revoked his community supervision based on grounds not
before the trial court: that he committed the offense of sexual contact. 
Proceedings in the Trial Court
            The State filed a motion to revoke based on the verdict of the jury. The motion alleged that
appellant had violated the terms and conditions of his community supervision by committing the
offense of sexual contact with a child and by committing the offense of burglary of a habitation with
the intent to commit the felony of indecency with a child.
            At the beginning of the punishment/revocation hearing, appellant’s trial counsel
acknowledged that the State was seeking to revoke based on the jury’s burglary conviction and that
the State was going to ask that the sentences be stacked. During the hearing, the State asked the trial
court to revoke and have the sentences run concurrently. In its argument, the State argued that the
trial court had twice before continued appellant’s community supervision and that appellant had
repaid the trial court’s “compassion” by “going out, breaking into the home of the Winters, and
committing indecency with [a child].”
            At the conclusion of the hearing, the trial court stated that the State had filed a motion to
revoke based on the jury verdict in the burglary case, that the revocation case had run concurrently
with the burglary trial, and that the trial court found the allegation “dealing with indecency with a
child by contact to be true.” The trial court then revoked the community supervision and imposed
the original sentence of confinement for ten years.
Analysis
            We disagree with appellant’s argument that the trial court revoked his community supervision
based on an allegation that he committed the offense of sexual contact as opposed to the allegation
that he committed the offense of burglary. When reviewed in its entirety, the record does not support
appellant’s argument. Appellant’s issues are overruled.
This Court’s Ruling
            In Cause No. 11-03-00377-CR, the judgment of the trial court is affirmed. In Cause No. 11-03-00376-CR, the judgment of the trial court is modified to reflect that the trial court found that
appellant had violated the terms and conditions of his community supervision by committing the
offense of burglary of a habitation in Trial Court Cause No. CR 27,049. As modified, the trial
court’s judgment in our Cause No. 11-03-00376-CR is affirmed.
 
                                                                                                PER CURIAM
 
May 12, 2005
Do not publish. See TEX.R.APP.P. 47.2(b).
Panel consists of: Arnot C.J., and 
Wright, J., and McCall, J.